## UNITED STATES BANKRUPTCY COURT
**District of Massachusetts**
Harold Donohue Federal Building & Courthouse
595 Main Street
Worcester, MA 01608

| | |
|---|---|
| Complete Name of Case | In re: Crane Rental Company, Inc. |
| Docket No. Case No. | 05-43338 |
| Court | United States Bankruptcy Court for the District of Massachusetts |
| Date Decision Rendered | October 31, 2005 |
| JUDGE | Joel B. Rosenthal |

| ATTORNEYS: | REPRESENTING: | ADDRESS: |
|---|---|---|
| Jonathon M. Conti | New England Teamsters and Trucking Industry Pension Fund | 177 Milk Street Boston, MA 02109 |
| Michael B. Feinman | Crane Rental Company, Inc. | 23 Main Street Andover, MA 01810 |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | |
| Crane Rental Company, Inc. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 05-43338-JBR |
| | ) | |

MEMORANDUM OF DECISION

This case comes before the Court on a Motion by the Creditor, the New England Teamsters and Trucking Industry Pension Fund (the "Fund"), on the Motion for Allowance of the Late Filing of a Proof of Claim (Docket # 180) and request for a hearing on the Motion (Docket # 181). Crane Rental Company, Inc. (the "Debtor") filed an Opposition to the Fund's Motion (Docket # 192).

Background

On May 17, 2005, the Debtor filed its voluntary Chapter 11 Bankruptcy Petition. On or about May 18, 2005, the Debtor filed a motion pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure to establish a Bar Date for filing Proofs of Claim. The deadline for filing a proof of claim in this proceeding was set for August 19, 2005.

The Fund is a multi-employer pension fund governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1000 et seq., which receives contributions from the Debtor under a collective bargaining agreement between the Debtor and Teamsters Local Union 49 and under the terms of the Fund's Agreement and Declaration of Trust. On August 5, 2005, the Fund filed a timely Proof of Claim in the amount of $5,719.64 for

monthly pension contributions owed to the Fund by the Debtor for the months of January 2005 through April 2005.

Following the filing of the Chapter 11 Petition, the Debtor continued to make contributions to the Fund for hours worked by Teamster employees in May, June, and July 2005. Copies of the remittance reports were completed by the Debtor. The Debtor made its most recent payment of monthly contributions to the Fund in August 2005 and as of that time had not indicated to the Fund that it was ceasing work.

On September 9, 2005 a copy of the Debtor's Disclosure Statement and it reorganization plan, entitled "Liquidating Plan of Reorganization," was sent out to all interested parties, including to Counsel for the Fund. The Fund alleges that this was the first time that the Fund was placed on notice that the Debtor was liquidating all of its assets, and would no longer operate. The Debtor alleges that the Fund should have been aware at least one to two years prior to the filing, that the Debtor was in the process of winding down its affairs. The fact that the Debtor would no longer operate affects the Fund as well as the Debtor because of the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §4001 et seq. (MPPAA). The MPPAA imposes on a contributing employer to an ERISA multiemployer pension fund withdrawal liability[1] when the employer permanently ceases to have an obligation to contribute or permanently ceases to all covered operations under the Plan.

## Discussion

---

[1] The Act "'requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan,' consisting of 'the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated as the difference between the present value of vested benefits and the current value of the plan's assets.'" *In re CD Realty Partners*, 205 B.R. 651, 657 (Bankr. D. Mass. 1997) citing *Pension Benefit Guaranty Corp. V. R.A. Gray & Co.*, 467 U.S. 717, 725, 104 S.Ct. 2709, 2715, 81 L.Ed.2d 601 (1986).

## Status of the Fund's Claim

The question to be answered by the Court is when did the Fund have a claim against the Debtor for withdrawal liability. The parties concede that at the time of the Bar Date set by the Court, the Debtor had not withdrawn from the Fund and therefore the amount of the withdrawal liability, if any, was not fixed or liquidated. Nevertheless the Bankruptcy Code broadly defines claims. A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent*, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C.§ 101(5)(A). The Debtor urges this Court to find that the Fund held a contingent withdrawal liability claim prior to the Bar Date while the Fund argues that there was no withdrawal liability until it learned that there would be a wind down of the Debtor's business. Courts have differed as to which approach is correct.

In *CD Realty Partners*, the court had to determine whether the claim of the New England Teamsters and Trucking Industry Pension Fund for the employer's "withdrawal liability" had been among the debts discharged when the court entered the confirmation order because the claim should be deemed a contingent claim. *In re CD Realty Partners*, 205 B.R. 651 (Bankr. D. Mass. 1997). In determining that an employer's withdrawal liability was a contingent claim, Judge Kenner noted "a contingent right to payment is, by definition, a right to payment that, because it is contingent, is not yet and may never be a right to payment. . . . it might be said to exist somewhere on a continuum between being and nonbeing." *Id.* at 656.

In order to determine at what point the contingent right to payment was sufficiently along the continuum, the court stated it "must determine first what event or series of events 'triggers' this [withdrawal] liability and then whether the occurrence of that event either was or could fairly have been contemplated by the parties before confirmation of the plan." *Id.* at 657. The court

determined that in the instance that the triggering event is withdrawal from the plan, and further that the withdrawal could fairly have been anticipated by the parties. "One can assume that sooner or later, every participating employer will withdraw. Withdrawal is sufficiently probable – if not philosophically certain – that it could fairly have been contemplated by the parties. Only the date of withdrawal was indefinite." *Id.* at 659.

The alternate approach arises from the Sixth Circuit decision in *CPT Holdings, Inc.*. In that case, the Court found that "[w]ithdrawal liability is not a 'claim' prior to confirmation." *CPT Holdings, Inc. v. Industrial & Allied Employees Union Pension Plan, Local 73*, 162 F.3d 405, 409 (6th Cir. 1998). The question before the Sixth Circuit was "whether a 'claim' exists at confirmation where an employer assumes a plan's funding obligations during Chapter 11 proceedings, but does not withdraw until well after confirmation of the reorganization plan." *Id.* at 407. The Court stated that the relevant non-bankruptcy law must be examined to see whether a right to payment, even a contingent right existed. *Id.* The Court found that "a multiemployer pension plan has no enforceable right to payment for withdrawal liability until an employer actually withdraws from a plan, leaving the plan underfunded." *Id.* at 409.

This Court finds the decision in *In re CD Realty Partners* to be convincing. This Court respectfully disagrees with the Sixth Circuit's finding that withdrawal liability is not a claim until the withdrawal is made. The withdrawal liability claim by the Fund should have been filed as a contingent, nonliquidated claim, therefore its filing is deemed late.

Excusable Neglect

Under Bankruptcy Rule 9006 (b)(1), the Court has discretion "to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect.'" *Pioneer Investment Services Co. V. Brunswick Associates LTD. Partnership*, 507 U.S. 380, 382,

113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). To find excusable neglect the Court must conduct a two part inquiry: (1) whether there was neglect; and (2) whether it was excusable.

In *Pioneer Investment*, the Court found that neglect had a broad interpretation that allowed courts, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control. *Id.* at 388, 113 S.Ct. at 1494. "The ordinary meaning of 'neglect' is 'to give little attention to respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to esp[ecially] through carelessness.' Webster's Ninth Collegiate Dictionary 791 (1983)." *Id.* In the instant case, the Fund alleged that it failed to file a timely claim because it did not realize that the Debtor was liquidating its assets versus continuing to operate until it received a copy of the Debtor's Disclosure Statement and its reorganization plan. The Fund's failure to recognize that it held a contingent claim, and therefore failed to file the proof of claim before the Bar Date, should be deemed careless.

The second inquiry is whether the Fund's neglect of the Bar Date was excusable. The determination of whether the neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omissions. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*, 507 U.S. at 395, 113 S.Ct. at 1498. The Court finds that there was no prejudice to the Debtor because the late filing occurred only thirty (30) days after the Bar Date and before the Debtor's Chapter 11 "Liquidating Plan of Reorganization" had been confirmed and even before the Disclosure Statement had been approved. The Plan provides for one hundred (100) cents on the dollar in payout to the creditors as well as money for

equity holders. No measurable delay to the other creditors will result from the allowance of the late proof of claim. The Debtor had continued to make its regular payments into the Fund through August 2005. As the Court analyzes excusability, it is cognizant of the fact that the same party involved in the instant case was involved in the Judge Kenner decision, and notes that but for the fact that there is no prejudice, the outcome may have been different. The Court finds that the Fund's failure to comply with the August 19, 2005 Bar Date was the result of excusable neglect.

### Conclusion

The Court finds that the withdrawal liability of the Debtor qualifies as a contingent claim held by the Fund. The Court also finds that the Fund's failure to file its proof of claim prior to the bar date was the result of excusable neglect, and therefore will allow the filing of the late proof of claim by the Fund without determining the amount of the claim.

A Separate Order will issue.

Dated: October 31, 2005

*Joel B. Rosenthal*
Joel B. Rosenthal
United States Bankruptcy Judge